## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CONSOLIDATED GRAIN & BARGE, INC. | CIVIL ACTION |
| | NO.  12-0892 |
| VERSUS | |
| | SECTION "F"  (3) |
| M/V DRAWSKO, *in rem*, and POLSTEAM SHIPPING AGENCY, LTD., DEAD SEA WORKS, LTD., and E. N. BISSO & SONS, INC., *in personam* | JUDGE FELDMAN |
| | MAG. KNOWLES |

## DEFENSES AND ANSWER

INTO COURT, through undersigned counsel, pursuant to Fed.R.Civ.P. Rule E(8) of the Supplemental Rules for Certain Admiralty and Maritime Claims, and for no other purpose, comes Erato Two Shipping Ltd., Bahamas (sometimes referred to as "claimant"), as owner and/or claimant to the M/V DRAWSKO, and in answer to the Original Complaint for Damages of Consolidated Grain and Barge, Inc. (hereinafter referred to as "CGB") avers as follows:

## FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

## SECOND DEFENSE

The court lacks personal jurisdiction over the claimant.

## THIRD DEFENSE

Pending discovery, claimant reserves its rights to claim that there has been a failure to join a party under Rule 19.

- 1 -

PD.6343780.1

## **FOURTH DEFENSE**

NOW, claimant responds to the numbered paragraphs of the Complaint as follows:

1.

Denied for lack of sufficient information to justify a belief therein.

2.

It is admitted that the M/V DRAWSKO is a bulk carrier which at all relevant times was registered under a foreign flag.  It is also admitted that the DRAWSKO initially berthed at the midstream facility in question on or about March 30, 2011 (not March 31, 2011 as alleged).  The remaining allegations of this paragraph require no answer as they state or attempt to state conclusions of law or jurisdictional matters; however, to the extent answer may be deemed necessary, all allegations not specifically admitted are hereby denied.  Claimant also further avers that the Letter of Undertaking is the best evidence of its terms and conditions.

3.

Denied, except to admit Polsteam Shipping Agency, Ltd. is a foreign corporation based in Poland.  Polsteam Shipping Agency, Ltd. was not the owner or operator of the DRAWSKO at the time in question, and this company has no involvement in this case.

4.

Based on information and belief, Dead Sea Works, Ltd. (hereinafter referred to as "DSW") was a charterer of the M/V DRAWSKO.  The remaining allegations of this paragraph are denied for lack of sufficient information to justify belief therein.

- 2 -

5.

It is admitted that Bisso was engaged to conduct salvage operations related to the anchor chain and anchor of the DRAWSKO, but all remaining allegations of this paragraph are denied for lack of sufficient information to justify belief therein.

6.

No answer is required to the allegations of this paragraph which state or attempt to state conclusions or law and/or jurisdictional matters. To the extent answer may be deemed necessary, it is admitted that this matter arises under the admiralty and maritime law of the United States and Rule 9(h) of the Federal Rules of Civil Procedure.

7.

No answer is required to the allegations of this paragraph which state or attempt to state conclusions or law and/or jurisdictional matters. However, further answering, it is admitted that a substantial part of the events or omissions giving rise to the instant claim occurred within the Eastern District of Louisiana.

8.

It is admitted that the DRAWSKO entered the berth on or about March 30, 2011, not March 31, 2011. The vessel then deployed its anchors, utilized the facility's mooring buoys, and began cargo discharge operations. It is also admitted that it was anticipated the vessel would depart on or about April 3, 2011, although this was not a fixed deadline. The remainder of the allegations of this paragraph are denied and/or denied as written.

- 3 -

9.

These allegations are denied insofar as they pertain to claimant and/or the M/V DRAWSKO interests and/or any parties owning or operating the DRAWSKO. The DRAWSKO interests also specifically deny that they agreed to be bound by the provisions of the Tariff or any other specific contract with CGB.

10.

Denied. The port anchor of the DRAWSKO became fouled on underwater obstructions, as will be proven at the trial of this matter, and the windlass was broken by efforts to free the anchor from these obstructions. These obstructions rendered the berth unsafe and existed pursuant to the negligence, strict liability or other fault of plaintiff CGB, rendering CGB liable for all costs, fees, damages, delays, expenses and other losses incurred by the DRAWSKO and/or those interested in the DRAWSKO.

11.

Denied, except to admit that Bisso was retained to aid in retrieving/salvaging the anchor chain and anchor, and that the anchor chain slipped off the deck of a Bisso vessel. Further answering, representatives of Bisso will testify that the anchor could not be salvaged despite its best efforts, including the use of a heavy lift crane barge, because it was heavily fouled on underwater obstructions.

12.

It is admitted that attempts to salvage the anchor chain and anchor were ongoing through approximately April 6, 2011, but were unsuccessful despite the efforts of Bisso and/or Weber Marine, Inc. The remaining allegations of this paragraph are denied

- 4 -

and/or denied as written.  Further answering, while dragging a salvage anchor or hook through the area in question, Weber Marine, Inc. located numerous wires, cables and other obstructions which should not have been in the berth in question, where plaintiff CGB knew vessel anchors would be deployed.

13.

Denied and/or denied for lack of sufficient information to justify belief therein.

14.

Claimant re-alleges and incorporates its answers and defenses to Paragraphs 1 – 13.

15.

Denied and/or denied for lack of sufficient information pending further discovery. Further answering, all of these additional charges were due solely to the negligence, strict liability or other fault of plaintiff CGB and/or its unsafe berth, precluding CGB from recovering these expenses.

16.

It is admitted that claimant has not paid these amounts, which are not owed by claimant/defendant.

17.

Denied.

18.

Claimant re-alleges and incorporates its answers and defenses raised in paragraphs 1 – 13.

19.

Denied.  Further answering, claimant did not sign or otherwise agree to the terms of any alleged tariff.

20.

Denied.  Further answering, see the response to paragraph 19 above.

21.

Denied.  Further answering, see the response to paragraphs 19 and 20 above.

22.

Claimant re-alleges and incorporates its answers and defenses to paragraphs 1 – 13.

23.

Denied and/or denied for lack of sufficient information to justify belief therein pending discovery and because these allegations set forth conclusions of law.

24.

Denied insofar as these allegations pertain to claimant.

25.

Denied and/or denied for lack of sufficient information to justify belief therein

26.

Claimant re-alleges and incorporates its defenses and answers to paragraphs 1 – 13.

27.

Denied for lack of sufficient information to justify belief therein.

28.

Denied and/or denied as written.  Furthermore, to the extent the DRAWSKO's use of the buoys continued for a prolonged period of time, it was solely because of unsafe and/or negligent conditions in the berth which resulted in the port anchor of the DRAWSKO becoming fouled.

29.

Denied and/or denied for lack of sufficient information to justify belief therein.

30.

Claimant asserts the following affirmative defenses, and reserves the right to assert such other and further affirmative defenses which may become applicable as discovery proceeds:

a)   Contributory negligence;

b)   Assumption of risk;

c)   Duress;

d)   Estoppel;

e)   Failure of consideration;

f)   Fraud;

g)   Illegality;

h)   Statute of frauds;

i)   Waiver.

## COUNTERCLAIM

NOW, for their Counterclaim against Consolidated Grain and Barge, Inc. ("CGB"), Erato Two Shipping Ltd., Bahamas and/or Polsteam Shipping Company Limited, Limassol, Cyprus, as their interests may appear, aver:

I.

This is a case of admiralty or maritime jurisdiction within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

II.

At all materials times, Erato Two Shipping Ltd., Bahamas was a foreign (Bahamas) corporation or similar limited liability company which owned the M/V DRAWSKO, and Polsteam Shipping Company Limited, Limassol, Cyprus, a foreign (Cyprus) corporation or similar limited liability company, was the bareboat charterer of the vessel.

III.

On or about March 30, 2011, the M/V DRAWSKO entered a midstream transfer facility located at Mississippi River Mile 135 AHP on the Mississippi River near Laplace, Louisiana.

IV.

The midstream transfer facility described above was, upon information and belief, owned and/or operated by Consolidated Grain and Barge, Inc. ("CGB"), which upon information and belief is a domestic corporation organized and existing under the laws of the State of Louisiana, with its principal office in Covington, Louisiana.

- 8 -

V.

The M/V DRAWSKO at all times approached, entered and anchored at the midstream transfer facility in question in a prudent and seamanlike manner. The vessel deployed its port anchor as directed by CGB and/or persons acting on behalf of CGB.

VI.

On or about April 3, 2011, the M/V DRAWSKO attempted to heave or raise her port bow anchor. This proved impossible because the port bow anchor was fouled on an underwater obstruction within the CGB midstream facility. Despite the maximum exertion of a fully operational anchor windlass, as well as the actions of harbor tug, the anchor could not be freed. In fact, efforts to free the anchor broke the anchor windlass. (The vessel was only 10 months old at the time of the incident.) Claimant and/or the M/V DRAWSKO interests were then required to engage the services of a qualified marine salvage company, E. N. Bisso & Son, Inc.

VII.

E. N. Bisso & Son, Inc. (hereinafter "Bisso") used a heavy lift crane barge to try to raise the anchor in question. Despite applying substantial force over and above the weight of the anchor, it could not be budged from its fouled and/or obstructed position in the bottom of the Mississippi River. Indeed, during an attempted lift of the anchor, the slings attached to the Bisso crane parted, and the loose end of the anchor chain fell into the Mississippi River.

VIII.

As a result of the above, the M/V DRAWSKO interests were obligated to hire another contractor, Weber Marine, Inc., to attempt to locate and/or salvage the anchor and/or anchor chain.  Weber Marine, Inc. deployed another crane barge to the location and drug a salvage anchor or hook through the berth in an effort to locate the anchor and/or anchor chain.  These attempts to salvage the anchor chain and anchor were unsuccessful, but during these efforts numerous unsafe underwater obstructions were pulled from the berth. These obstructions, and/or others, fouled the anchor of the M/V DRAWSKO and prevented it from being lifted by the ship's anchor windlass and/or the Bisso crane barge.

IX.

The anchor of the M/V DRAWSKO became fouled and/or obstructed due to underwater obstructions existing as a result of the negligence, strict liability, gross negligence or other fault of CGB, rendering CGB liable for all direct and consequential expenses connected with this incident.

X.

The negligence of CGB includes, but is not limited to failure to remove known obstructions, failure to dredge the river bottom in the berth, failing to conduct sonar or other scans of the berth and other acts of negligence and/or fault which will be proven at the trial of this matter.

- 10 -

XI.

As a result of the unsafe berth operated by CGB, Erato Two Shipping Ltd., Bahamas and/or Polsteam Shipping Company Limited, Limassol, Cyprus (a/k/a the M/V DRAWSKO interests) suffered the following damages:

| a. | Tugs, linemen, etc. April 3, 2011 | $18,820.50 |
|---|---|---|
| b. | Agency fee | $3,000.00 |
| c. | E. N. Bisso fee | $37,785.00 |
| d. | Extra tugs | $162,875.61 |
| e. | Anchor windlass repairs | $65,196.00 |
| f. | Loss of hire/downtime | $80,870.17 |
| g. | Weber Marine, Inc. | $27,500.00 |
| h. | Anchor and anchor chain | $63,801.07 |
| i. | Pilotage | $11,085.73 |
| j. | Linesman at Perry Street | $1,841.50 |
| k. | Repair berth wharfage | $26,600.00 |
| | **TOTAL** | **$499,375.58** |

Counter-claimants reserve the right to supplement and/or amend their damages as discovery proceeds.

WHEREFORE, after due proceedings, claimant Erato Two Shipping Ltd., Bahamas prays that the plaintiff's Complaint be dismissed, with prejudice, and at plaintiff's costs. Claimant/counter-claimants Erato Two Shipping Ltd., Bahamas and/or

- 11 -

Polsteam Shipping Company Limited, Limassol, Cyprus also pray for full recovery on their counterclaim, including pre- and post- judgment interest, costs, and attorneys' fees (if applicable).   Claimant/counter-claimants further pray for all such other and further relief as law and justice and equity may require.

Respectfully submitted,

**PHELPS DUNBAR LLP**


BY:   *s/ Kevin J. LaVie*
Kevin J. LaVie, LA Bar: #14125
Raymond T. Waid, LA Bar: #31351
Canal Place
365 Canal Street • Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Telecopier: (504) 568-9130

ATTORNEYS FOR CLAIMANT/COUNTER-
CLAIMANT ERATO TWO SHIPPING LTD.,
BAHAMAS AND COUNTER-CLAIMANT
POLSTEAM SHIPPING COMPANY LIMITED,
LIMASSOL, CYPRUS

- 12 -

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing pleading has this date been served upon all counsel of record by:

( )  Hand Delivery      ( )  Prepaid U.S. Mail

( )  Facsimile       ( )  UPS

( X )  ECF        ( )  E-mail

New Orleans, Louisiana this 23rd day of May, 2012.

*s/ Kevin J. LaVie*
KEVIN J. LAVIE